USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/10/2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

**MOHAMED ABDELAL,**

                           **Plaintiff,**

              -against-

**COMMISSIONER RAYMOND W. KELLY,**
**et al.,**

                           **Defendants.**

-----------------------------------------------------------------X

**13-CV-4341 (ALC)(SN)**

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge**:

On June 8, 2018, Plaintiff filed a motion to reopen discovery. ECF No. 147. For the reasons that follow, the motion is DENIED.

## BACKGROUND

Plaintiff is a former police officer who worked for the New York City Police Department ("NYPD") from 2006 until 2013. ECF No. 142 at 2. He is a naturalized U.S. citizen who was born in Egypt and identifies as Muslim. Id. at 2–3. During his employment, the NYPD Advocate's Office filed disciplinary charges against Plaintiff for eleven specifications of misconduct, including, among others, failing to properly search a prisoner under his supervision; visiting a correctional facility while off-duty and misrepresenting the reason for his visit; traveling to Las Vegas, Nevada, while on sick leave; moving to New Jersey without notifying his commanding officer; and working another job without the requisite off-duty employment approval. Id. at 3. After the NYPD Internal Affairs Bureau investigated Plaintiff's unauthorized visit to the correctional facility, Plaintiff was placed on Level II Disciplinary Monitoring. ECF No. 137 at 4.

Plaintiff pleaded guilty to seven of the charges and disputed four of them. ECF No. 142 at 3. Following a five-day trial, Deputy Commissioner of Trials Martin G. Karopkin found Plaintiff guilty of nine charges, dismissed two charges, and recommended that Plaintiff be placed on dismissal probation for one year and be required to forfeit 45 vacation days. Id. NYPD Commissioner Raymond W. Kelly adopted the factual findings but rejected Karopkin's recommended penalty, instead offering Plaintiff a negotiated penalty that would have required Plaintiff to immediately file for vested retirement. Id. Plaintiff rejected the proposed penalty, and Kelly fired him effective January 29, 2013. Id.

On June 21, 2013, Plaintiff commenced this action against Kelly and the City of New York, alleging that they had discriminated against him and subjected him to a hostile work environment because of his Egyptian national origin, Arab ancestry, and Muslim religion. ECF No. 1. On March 31, 2017, the Court granted Defendants' motion for summary judgment, holding that Plaintiff's disparate treatment claims were barred by collateral estoppel and that his hostile work environment claims were untimely. ECF Nos. 130, 132. Plaintiff appealed the Court's decision, and on April 24, 2018, the U.S. Court of Appeals for the Second Circuit vacated the judgment and remanded the case for further proceedings. ECF No. 142.

Meanwhile, in February 2017, former NYPD Internal Affairs Chief Charles Campisi published a memoir about his time in the NYPD. ECF No. 149 at 2–3. In the book, Campisi discusses his "serious concern . . . . that the NYPD will be infiltrated by sympathizers or even sleeper agents of ISIS or al-Qaeda or some other terrorist organization." ECF No. 148-1 at 5. Campisi explains that "[t]here are already certain counterintelligence procedures in place to help guard against infiltration or internal subversion of the NYPD." Id. at 6. He later notes that in order to guard against radicalization, police departments should engage in "constant, proactive

Internal Affairs or counterintelligence monitoring of everything from Department computer systems to individual officers' on- and off-duty conduct." Id. at 7. Campisi also states, "While the current major terrorist threat is posed by radical, anti-American Islamic fanatics, to automatically suspect all of the hundreds of Muslim cops in the NYPD of having jihadist sympathies would not only be stupid and wrong, but also counterproductive." Id. at 6.

On April 16, 2018, BuzzFeed News published disciplinary records for approximately 1,800 NYPD employees who faced charges of misconduct between 2011 and 2015. ECF No. 148-2. The files were provided to BuzzFeed News "by a source who requested anonymity." Id. at 3. After determining that "there is an overwhelming public interest in these documents' release," BuzzFeed News published the disciplinary records "in a format that is designed to be searchable by criminal defendants, police officers, scholars, and the public." Id. at 3–4. But BuzzFeed News noted that the documents in the database were "not a complete record of disciplinary cases during these years." Id. at 5. After analyzing the records, BuzzFeed News reporters noted that "of the more than 100 employees in these files who were accused of lying on official reports, under oath, or during an internal affairs investigation, only a handful were fired." Id. at 5.

On June 8, 2018, Plaintiff filed a motion to reopen discovery. ECF No. 147. Based on Campisi's memoir, Plaintiff seeks to depose Campisi and seeks files and data regarding NYPD officers placed on Level II Disciplinary Monitoring. ECF No. 149 at 10. In addition, based on the BuzzFeed News article, Plaintiff seeks files and data regarding NYPD officers who were found to be in violation of administrative rules "relating to lying in the official function" but who were not fired for their misconduct. Id.

**DISCUSSION**

Federal Rule of Civil Procedure 16(b) provides that a pretrial scheduling order "may be modified only for good cause and with the judge's consent." "A party seeking to reopen discovery bears the burden of establishing good cause." Jacobs v. N.Y.C. Dep't of Educ., No. 11-CV-5058 (MKB)(RML), 2015 WL 7568642, at *3 (E.D.N.Y. Nov. 24, 2015). "A significant consideration is whether there has already been adequate opportunity for discovery." Bakalar v. Vavra, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011). In addition, courts often consider:

> (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.

Id.

Plaintiff argues that Campisi's book demonstrates that the IAB had "policies and procedures in place to guard against infiltration and internal subversion of Islamic terrorism . . . which included surveillance and Level II Performance Monitoring." ECF No. 153 at 5. Plaintiff contends that although "these policies undoubtedly resulted in the hostile work environment Plaintiff faced on account of his race, religion and/or national origin, there was no way Plaintiff would have, or could have, known of such policies or of Campisi's involvement in implementing such policies, until after the publication of Campisi's Memoir." Id. Accordingly, Plaintiff asks the Court to reopen discovery to allow him to depose Campisi and obtain files and data relating to NYPD officers who were placed on Level II Disciplinary Monitoring. ECF No. 149 at 9–10.

Plaintiff had ample opportunity to depose Campisi while discovery was open in this matter, and Plaintiff could have asked Campisi about the NYPD's investigatory and surveillance practices. But Plaintiff decided not to depose Campisi. Instead, "in the interest of time and

4

expense, Plaintiff elected to pursue depositions of those individuals who were, based on the documents produced, involved in the discrimination faced by Plaintiff." ECF No. 153 at 5. The Court will not reopen discovery now simply because Plaintiff made a strategic decision during the discovery process not to depose a high-ranking official who likely has knowledge about the NYPD's investigatory practices. Moreover, in the depositions that he did conduct, Plaintiff could have asked the deponents about NYPD's investigatory practices. As the former NYPD Commissioner, Kelly almost certainly had knowledge of the NYPD's practices and procedures. Plaintiff could have asked Kelly about the NYPD's counterintelligence practices and whether those practices targeted Muslim officers.

In addition, Plaintiff makes the logical leap that because the NYPD had "certain counterintelligence procedures in place to help guard against infiltration or internal subversion," those procedures must have included Level II Disciplinary Monitoring. ECF No. 148-1 at 6; ECF No. 153 at 5. Therefore, he argues that "materials pertaining to Performance Level II monitoring are necessary and indispensable to meaningfully depose Campisi." ECF No. 153 at 2. But Campisi does not mention Level II Disciplinary Monitoring. Campisi's vague references to counterintelligence procedures are not tied to Level II Disciplinary Monitoring in any way. See ECF No. 148-1 at 6. Even if the Court permitted Plaintiff to depose Campisi at this late stage in the case, there is no reason to believe that Level II Disciplinary Monitoring was part of the counterintelligence procedures Campisi referenced in his book. Thus, Campisi's memoir does not justify further production of records relating to NYPD employees who were subjected to Level II Disciplinary Monitoring.

Finally, during discovery, Plaintiff requested "statistical information, data, records or other information . . . broken down by Muslim and non-Muslim Officers" relating to disciplinary

5

action taken against NYPD officers for violating various administrative rules, including Patrol Guide Section 203-10 (one of the administrative rules Plaintiff was found to have violated for misrepresenting the reason for his visit to a correctional facility while off-duty). ECF No. 149 at 4. The NYPD informed Plaintiff that it did not maintain demographic information in connection with its disciplinary records and that producing the information Plaintiff requested would require the NYPD to gather, cross-reference, and synthesize multiple sets of data from different sources. ECF No. 64. As a result, the parties agreed to narrow the scope of the discovery requests to only those files regarding officers charged with violating Patrol Guide Interim Order Number 11. Id. at 2. Plaintiff argues that he has now "become aware, given the BuzzFeed News article, that certain requested materials regarding decisions not to take disciplinary action . . . were clearly readily available to the City for production during discovery, despite their contentions to the contrary." ECF No. 149 at 8. Therefore, Plaintiff asks the Court to allow him to obtain "files and data related to NYPD officers found in violation of P.G. 203-10 or other 'conduct prejudicial' sections relating to lying in the official function that did not result in termination." Id. at 10.

But the BuzzFeed News database does not demonstrate that the statistical information Plaintiff originally sought during discovery was readily available to the NYPD. On the contrary, it seems that an anonymous source surreptitiously sent BuzzFeed News thousands of NYPD disciplinary records, which BuzzFeed News then organized and compiled into a searchable database. See ECF No. 148-2. The news article does not state that these records were easily accessible or searchable before BuzzFeed News compiled them. Id. Nor does the article indicate that the records include any demographic information on the NYPD employees who were disciplined. Id. Thus, it remains plausible that the NYPD would have had to gather information from multiple sources and cross-reference those documents in order to produce the demographic

6

and statistical information Plaintiff sought during discovery. Plaintiff appears to be using the BuzzFeed News article as an excuse to renegotiate a discovery issue that was resolved between the parties over three years ago. This does not constitute good cause for reopening discovery.

## CONCLUSION

Plaintiff has failed to demonstrate that there is good cause for reopening discovery in this matter. Accordingly, Plaintiff's motion to reopen discovery is DENIED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 147.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:    August 10, 2018
               New York, New York